**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**A.J. BOSMAN,**

                    **Appellant,**

                    **v.**

**MATTHEW J. GLOD,**

                    **Appellee.**
_____

**6:15-cv-1036 (GLS)**

**APPEARANCES:**          **OF COUNSEL:**

**FOR THE APPELLANT:**
A.J. Bosman
Pro Se
Bosman Law Firm
201 West Court Street
Rome, NY 13440

**FOR THE APPELLEE:**
Office of David J. Gruenewald     DAVID J. GRUENEWALD, ESQ.
117 Highbridge Street
Fayetteville, NY 13066

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Appellant *pro se* A.J. Bosman[1] appeals from a Memorandum-

---

[1] Bosman, an attorney, was represented before Bankruptcy Court and on the papers in this appeal, however, now she appears *pro se*.

Decision and Order of the Bankruptcy Court (Davis, J.), filed April 1, 2015, which: (1) found in favor of appellee Matthew Glod; and (2) dismissed Bosman's adversary complaint in its entirety.[2] For the reasons that follow, Bankruptcy Court's order is affirmed.

## II. **Background**

In October 2005, Glod voluntarily filed for Chapter 13 bankruptcy protection, which was dismissed for his failure to make plan payments. (05-72431 Bankr. Dkt. Nos. 1, 33, 35.) In August 2013, Glod again voluntarily filed for Chapter 13 bankruptcy and listed Bosman as a creditor with a disputed debt of $5,000.00. (13-61372 Bankr. Dkt. No. 1.) Thereafter, Bosman commenced an adversary proceeding to determine whether a debt in the amount of $53,334.00 allegedly owed to her by Glod was except from discharge. (Dkt. No. 7, Attach. 1.) Bosman claimed the debt was nondischargeable on the grounds of Glod's false representations, related to construction work performed on her home, failure to list Bosman as a creditor in the 2005 bankruptcy petition, and larceny and embezzlement under 11 U.S.C. § 523(a)(2),(3),(4). (*Id.*) Glod answered,

---

[2] Bosman timely and properly appealed as detailed in this court's December 17, 2015 Summary Order. (Dkt. No. 5)

2

denied the allegations, and requested that the complaint be dismissed. (Dkt. No. 7, Attach. 2.) Bankruptcy Court issued a scheduling order, (Dkt. No. 7, Attach. 7), and a bench trial was held over two days on December 2 and 16, 2014, (Dkt. No. 8, Attachs. 11, 15). At trial, five witnesses testified. (*Id.*) Bosman elicited her own testimony and that of Timothy Taciak, a contractor who performed work on Bosman's home between 2006 and 2007, and Michael Bellinger, a heating and plumbing technician who serviced Bosman's boiler in 2014. (Dkt. No. 8, Attach. 11.) Glod and Brian Skinner, the general contractor for Bosman's home construction between 2005 and 2006, testified for the defense. (Dkt. No. 8, Attach. 15.) Following trial, the parties submitted closing memoranda, (Dkt. No. 8, Attachs. 17-21; Dkt. No. 9, Attachs. 1-2), and Bankruptcy Court issued its Memorandum-Decision and Order, which denied all of Bosman's claims and dismissed her complaint, (Dkt. No. 6 at 8-29). In addition, Bankruptcy Court noted that because of its ruling, Bosman could not continue a state court action against Glob individually and doing business as Matt Glod Electric seeking damages for claims alleging breach of contract, negligence, and unjust enrichment. (*Id.* at 17, 29.)

This adversary proceeding arises from an alleged debt owed for

3

construction work performed by Glod, a licensed master electrician, on Bosman's home between 2002 and 2005. In 2002, Bosman's late fiancé, Richard McClimans, served as the general contractor for the project and hired Glod to perform plumbing and heating services. (Dkt. No. 8, Attach. 11 at 3-4; Dkt. No. 8, Attach. 15 at 5-6, 9-10.) The home construction was financed by a construction loan and required the general contractor to authorize each draw provided by the lending institution. (Dkt. No. 8, Attach. 15 at 8, 16.) The cost of Glod's work was quoted in a contract, however, Glod presented Bosman with project proposals that she could accept or decline which would impact the ultimate project price. (*Id.* at 59.)

Pursuant to an agreed upon proposal, Glod purchased a 200,000 BTU Weil McClain boiler to be installed in Bosman's home. (Dkt. No. 8, Attach. 11 at 12.) Before installation, Glod agreed to store the boiler in his unheated workshop at no extra charge. (*Id.* at 25; Dkt. No. 8, Attach. 15 at 40.) In 2003, McClimans suddenly passed away and Bosman stopped construction on her home for approximately three years. (Dkt. No. 8, Attach. 11 at 25; Dkt. No. 8, Attach. 15 at 40.) Glod continued to store Bosman's boiler without charge. (Dkt. No. 8, Attach. 11 at 25.)

After over two years of storage, Glod sold the boiler without

4

Bosman's consent. (Dkt. No. 8, Attach. 15 at 41.) He noted that the boiler started to develop rust and he wanted to sell it before it further deteriorated, assuming Bosman would want to purchase and install a new boiler. (*Id.*)

Sometime in 2005, Bosman resumed construction on her home and entered into a new contract with Glod. (Dkt. No. 8, Attach. 11 at 25-26; Dkt. No. 8, Attach. 15 at 8; Dkt. No. 8, Attach. 19 at 3-6.) The contract stated that "[t]he boiler ha[d] been previously purchased by owner and [would] be installed at no charge." (Dkt. No. 8, Attach. 19 at 6.) The parties dispute when Bosman was informed that Glod had sold the boiler. Glod contends that he had discussed this with her before they entered into the 2005 contract while Bosman asserts it was months after. (Dkt. No. 8, Attach. 11 at 8, 26; Dkt. No. 8, Attach. 15 at 41, 73.) Skinner, who was the new general contractor, corroborated Glod's testimony. (Dkt. No. 8, Attach. 15 at 15.) Glod testified that he credited Bosman for the price of the original boiler and presented her with the option to repurchase the same boiler model or to upgrade to a more efficient model; she would be responsible for any difference in the cost. (*Id.* at 41, 73.) Bosman selected the more efficient model, a 230,000 BTU Weil McClain, which is

5

currently installed in her home. (Dkt. No. 8, Attach. 11 at 9, 28-29; Dkt. No. 8, Attach. 19 at 30.)

Bellinger, a heating and plumbing service technician, testified that he repaired Bosman's boiler system in 2014. (Dkt. No. 8, Attach. 11 at 64-65, 69, 71.) In his opinion, the 230,000 BTU Weil McClain boiler was too large for Bosman's home. (Dkt. No. 8, Attach. 11 at 74.)

The parties dispute whether Glod completed the contracted work, however, agree that Glod stopped working on Bosman's home in April 2006 after a dispute over light fixtures.[3] (Dkt. No. 8, Attach. 11 at 17, 36-37; Dkt. No. 8, Attach. 15 at 17-18.) Bosman also complained that Glod installed inadequate materials; specifically, she observed a light switch with rusted screws. (Dkt. No. 8, Attach. 11 at 17, 39.) Taciak, who performed repair work for Bosman in 2006 and 2007, testified that he replaced two switches, six wire connectors, and some piping that appeared used. (*Id.* at 52, 55-56.)

In addition, Bosman complained of a January 2006 invoice, which was labeled as the "final draw on heating, plumbin[g] & electrical until

---

[3] Skinner also resigned in the spring of 2006 after a dispute over funds from the construction loan. (Dkt. No. 8, Attach. 15 at 29-30.)

finish." (Dkt. No. 8, Attach. 19 at 39.)  She asserts that Glod fraudulently labeled this invoice as final because she was subsequently billed in an April 2006 invoice labeled "contract draw towards completion."  (*Id.* at 40.)  Bosman paid both invoices asserting that Glod refused to work if he did not receive the additional money.  (Dkt. No. 8, Attach. 11 at 10.)  Glod testified that Bosman made several add-ons for various plumbing, heating, and electrical work over the course of the 2005 contract, which increased costs by $10,000.00.  (Dkt. No. 8, Attach. 15 at 60.)

In 2007, Bosman commenced a state court action against Glod individually and doing business as Matt Glod Electric seeking $30,000.00 based on allegations of breach of contract, negligence, and unjust enrichment.  (Dkt. No. 6 at 17; Dkt. No. 8, Attach. 15 at 46-47, 64-65.)  The parties were engaged in discovery when Glod voluntarily filed for Chapter 13 bankruptcy in August 2013.  (Dkt. No. 6 at 17.)

In its Memorandum-Decision and Order, Bankruptcy Court held that the alleged debt of $53,334.00 was not except from discharge under 11 U.S.C. § 523(a)(2),(3), or (4).  (Dkt. No. 6 at 29.)  Regarding Bosman's allegations of false representations under section 523(a)(2)(A), Bankruptcy Court found that Bosman failed to prove that Glod made any false

7

representations, that he had the intent to deceive Bosman, or that she justifiably relied on his representations. (*Id.* at 24-25.) As to Bosman's allegation that Glod failed to list her as a creditor in his 2005 bankruptcy petition, Bankruptcy Court held that section 523(a)(3) was inapplicable where the debt, as was the case in Glod's 2005 bankruptcy proceeding, had not been discharged. (*Id.* at 26-27.) Additionally, regarding Bosman's allegations of larceny and embezzlement under section 523(a)(4), Bankruptcy Court determined that the Bosman paid Glod pursuant to a contract and he credited her for the cost of the original boiler and, therefore, his conduct was not a wrongful taking that amounted to larceny. (*Id.* at 28.) Likewise, Bankruptcy Court found that Glod lacked any intent to defraud and, thus, his conduct was not embezzlement under the statute. (*Id.* at 28-29.)

### III. Standard of Review

District courts have jurisdiction to hear both interlocutory and final appeals from orders of the bankruptcy court. *See* 28 U.S.C. § 158(a). In exercising its appellate jurisdiction, the district court distinguishes between findings of fact and conclusions of law; reviewing the former under the "clear error" standard, and the latter *de novo*. *R² Invs., LDC v. Charter*

8

*Commc'ns, Inc. (*In re *Charter Commc'ns, Inc.)*, 691 F.3d 476, 483 (2d Cir. 2012); *see United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). Where a finding is mixed—*i.e.*, it contains both conclusions of law and factual findings—the *de novo* standard applies. *See Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994). "After applying these standards to the questions of law and fact, the district court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" *Cty of Clinton v. Warehouse at Van Buren St., Inc.*, 496 B.R. 278, 280 (N.D.N.Y. 2013) (quoting former Fed. R. Bankr. P. 8013[4]).

## IV. Discussion

### A. Sanctions for Unpreserved Evidence

---

[4] On April 25, 2014, the Federal Rules of Bankruptcy Procedure were amended, effective December 1, 2014, by order of the Supreme Court. *See* Order Amending Fed. R. Bankr. P. (Apr. 25, 2014), http://www.supremecourt.gov/orders/courtorders/frbk14_d28l.pdf. The amendments, among other things, removed Rule 8013 and replaced it with a revised version of former Rule 8011. Despite the omission of what existed as Rule 8013 prior to December 2014, logic still compels the same conclusion with respect to the appellate powers of the District Court.

9

Bosman argues that Bankruptcy Court abused its discretion by failing to sanction Glod for not providing requested discovery, specifically, receipts or other proof of purchase of the materials he used on the construction project. (Dkt. No. 12 at 4-8.) Glod asserts that Bosman waived her request as it was not raised by motion during discovery or presented to Bankruptcy Court before trial. (Dkt. No. 13 at 4-5.) The court agrees with Glod.

As reflected in the record, Bosman first notified Bankruptcy Court about documents she requested but never received in her "Second Amended Pretrial Statements." (Dkt. No. 8, Attach. 6 at 2.) Under a heading labeled "Contested Material Facts," Bosman states — in two lines — that, "[d]efendant spoiled evidence and reportedly destroyed pertinent records in [d]efendant's possession, including receipts, warranty documents, and schematics. Said documents were demanded by letter by [p]laintiff prior to their destruction and [d]efendant deliberately refused to produce them or preserve them." (*Id.*) However, at no point in her submission did Bosman request relief from the court or provide support for her accusations. Rather, she waited until her closing memorandum to raise the issue and request relief. (Dkt. No. 9 at 5.)

"It is, quite simply, too late to raise [a request for sanctions]." *Tri-Cty. Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 178 (E.D.N.Y. 2007) (finding a request for discovery sanctions untimely when made for the first time at summary judgment); *see also Ali v. A & G Co., Inc.*, 542 F.2d 595, 596 (2d Cir. 1976) (noting that a request for discovery sanctions made for the first time on "the eve of trial . . . placed the court in an intolerable position"); *Baez v. Delta Airlines, Inc.*, No. 12 Civ. 3672, 2013 WL 5272935, at *9 n.15 (S.D.N.Y. Sept. 18, 2013) (collecting cases finding a motion for spoliation is untimely when issue was not raised during discovery). As Bosman failed to squarely raise the issue and seek relief before trial, Bankruptcy Court did not abuse its discretion in declining to issue sanctions against Glod. *See S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010) (reviewing discovery sanctions for abuse of discretion).

**B.    <u>Credibility</u>**

Bosman argues that Bankruptcy Court committed clear error by finding Glod credible because he allegedly lied in his bankruptcy petition. (Dkt. No. 12 at 5-6.)  Bosman asserts that Glod fraudulently listed a debt in the amount of $5,000.00 owed to her in his sworn bankruptcy petition but

11

then testified that "[a]s far as [he was] concerned [the debt] would be a zero." (*Id.* (quoting Dkt. No. 9, Attach. 1 at 9).) In sum, Bosman asserts that this alleged fraud undermines Glod's credibility. Glod, on the other hand, argues that this does not amount to fraud. (Dkt. No. 13 at 6.) He contends that creditors need only be put on notice of the bankruptcy and then creditors file proofs of claims to recover monies owed. (*Id.*, citing 11 U.S.C. §§ 501, 1305.)

Credibility findings are governed by clear error review. *See Hilton v. Bank of N.Y. Mellon*, No. 1:15-CV-0667, 2016 WL 234851, at *4 (N.D.N.Y. Jan. 19, 2016). "[P]articularly strong deference must be given [to] a bankruptcy court's finding based on credibility assessments of witnesses it has heard to testify." *In re Williams*, No. 14-10838, 2016 WL 1092696, at *9 (S.D.N.Y. Mar. 21, 2016) (internal quotation marks, citations, and alterations omitted); *see In re Boyer*, 328 F. App'x 711, 716 (2d Cir. 2009). A reviewing court will only overturn such findings when it "is left with the definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395.

Bankruptcy Court's credibility determination is not clearly erroneous. Bosman relies on her own conclusory determination that Glod lied and

12

such a finding should undercut Bankruptcy Court's credibility assessment. However, the court is not convinced that the inconsistency between the debt listed in Glod's bankruptcy petition and his opinion about the debt owed to Bosman amounts to fraud or a lie. To be sure, Glod listed the debt owed to Bosman as a disputed claim on his bankruptcy petition. (13-61372 Bankr. Dkt. No. 1 at 16); *see In re Wassah*, 417 B.R. 175, 184 (Bankr. E.D.N.Y. 2009) (noting that "[i]t is not uncommon for debtors . . . to be unsure of the precise amount owed to their creditors" and debtors list the debt as disputed to resolve the uncertainty). Without any other evidence and considering the deference afforded to a trial court's credibility finding, the court does not find that Bankruptcy Court clearly erred.

C. **Bankruptcy Court's Analysis Under 11 U.S.C. § 523(a)(2) and (4)**

As limited by her appellate brief, Bosman argues that Bankruptcy Court erred in its rulings under 11 U.S.C. § 523(a)(2) and (4). (Dkt. No. 12 at 5-15.) Specifically, Bosman contends that Glod committed larceny, or alternatively embezzlement, when he sold her original boiler to a third party without her consent. (*Id.* at 6-7.) In addition, Bosman asserts that Glod made fraudulent statements that: (1) Bosman would not have to pay for a boiler because it was in his possession; (2) the newer, more efficient boiler

13

was compatible with the older boiler system; (3) he would use new materials in his work under the 2005 contract; and (4) the January 2006 invoice was the final draw for the project. (*Id.* at 7-15.)

Glod contends that Bankruptcy Court correctly determined that Bosman failed to prove that he committed larceny, embezzlement, or made fraudulent statements; thus, his debt is not except from discharge. (Dkt. No. 13 at 6-9.) Regarding larceny and embezzlement, Glod argues that he never intended to defraud Bosman because he credited her for the price of the original boiler and she chose to upgrade to a newer model. (*Id.* at 6-7.) For the same reason, Glod asserts he did not make fraudulent statements regarding the boiler. (*Id.* at 8.) To the extent that Bosman complains about the compatibility of the boiler system, Glod contends it is at most a negligence claim, which is not actionable under the statute. (*Id.*) Additionally, he argues that Bosman failed to adduce sufficient evidence that he installed used materials. (*Id.* at 9.) Finally, he states that the January 2006 invoice was not the final draw because she subsequently requested add-ons, which increased the cost of the project. (*Id.* at 8.)

Bosman's arguments present mixed questions of law and fact, which the court reviews *de novo*. *See Travellers Int'l, A.G.*, 41 F.3d at 1575.

14

Having reviewed the parties' arguments, the court agrees with Bankruptcy Court's reasoning and adopts its rulings for the reasons stated in its Memorandum-Decision and Order. (Dkt. No. 6 at 18-25, 27-29.) In addition, the court notes that Bankruptcy Court's rulings largely turned on credibility findings in which it credited Glod's testimony. (*Id.* at 25.) As noted above, *see supra* Part IV.B, credibility assessments are reviewed for clear error, *see In re Williams*, 2016 WL 1092696, at *2, and having found none, the court affirms Bankruptcy Court's finding.

D.   **Burden Shifting**

Bosman argues that Bankruptcy Court placed too large a burden upon her regarding her claims of fraud and spoliation. (Dkt. No. 12 at 15-16.) As for fraud, Bosman claims that Bankruptcy Court failed to shift the burden to Glod after she established a prima facie case of fraud. (*Id.* at 15, citing *In re Wheeler*, 511 B.R. 240, 248 (Bankr. N.D.N.Y. 2014).) Bosman, however, never demonstrated fraud, (Dkt. No. 6 at 18-25, 27-29), and, therefore, Glod did not have to explain or rebut Bosman's evidence. *See In re Knight*, 538 B.R. 191, 204-08 (Bankr. Conn. 2015) (finding creditor did not prove fraud and, thus, burden did not shift to debtor). Accordingly, Bankruptcy Court did not err on this ground.

Bosman also claims that Bankruptcy Court failed to shift the burden to Glod after she presented evidence that he did not produce requested records. (Dkt. No. 12 at 15-16.) As noted above, *see supra* Part IV.A, Bosman failed to timely raise her spoliation argument before the Bankruptcy Court and, thus, waived the issue.

**E.** **Additional Contentions**

Bosman contends that Bankruptcy Court erred in two additional ways. (Dkt. No. 16-17.) First, she argues that Bankruptcy Court impermissibly calculated the debt owed by Glod. (*Id.* at 16.) Second, she asserts that Judge Davis erred by denying her request for a continuance at trial when she, an attorney, had a court appearance in an unrelated, represented matter. (*Id.* at 16-17.)

Bosman's contentions are without merit. In her adversary complaint, Bosman alleged that Glod owed her a debt in the amount of $53,334.00. (Dkt. No. 7, Attach. 1 ¶ 8.) In Bankruptcy Court's Memorandum-Decision and Order, it held that this alleged amount was not except from discharge but made no finding regarding the amount of Glod's debt. (Dkt. No. 6 at 29.) In any event, Bosman stated in her complaint that the adversary proceeding was limited to determine the dischargability of a debt; she did

16

not request that the court determine the amount of the alleged debt. (Dkt. No. 7, Attach. 1 ¶ 1, citing Fed. R. Bankr. P. 4007(e), 7001(6).)

Additionally, Bankruptcy Court did not err when it denied Bosman's request for a continuance. Trial judges have "broad discretion in granting or denying a request for short continuances during the course of a trial." *Winston v. Prudential Lines, Inc.*, 415 F.2d 619, 620 (2d Cir. 1969); *see Lewis v. Rawson*, 564 F.3d 569, 577-78 (2d Cir. 2009). Bosman's request for a continuance showed her preference to put her work obligations over her desire to assist her attorney in a proceeding that she commenced. In such a circumstance, Bankruptcy Court's denial was not in error.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Bankruptcy Court's April 1, 2015 Memorandum-Decision and Order is **AFFIRMED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 2, 2017
Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge

17